UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIE WILSON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-0413-X |
| | § | |
| BROOKFIELD PROPERTIES | § | |
| MULTIFAMILY, LLC, et al., | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Willie Wilson's motion to amend/remand. (Doc. 10). Having considered the parties' arguments, the underlying facts, and the applicable caselaw, the Court **GRANTS** the motion to amend/remand. (Doc. 10). Accordingly, the Court **REMANDS** this case to the 160th Judicial District Court, Dallas County, Texas.

## I. Background

This is an alleged personal injury case. Wilson alleges that on February 24, 2023, an unknown intruder broke into his home and woke him from his sleep by putting a gun to his head. Because this occurred in Wilson's apartment, Wilson filed suit against the property owners—Defendants FC Merc Complex, LP ("Merc") and Brookfield Properties Multifamily, LLC ("Brookfield")—on January 12, 2024, for failing to provide adequate security on the premises.

In filing this suit, Wilson sought counsel only as recent as January 8, 2024. Wilson maintains that he—and his counsel—since the time of original filing have

1

attempted to further investigate any relevant claims and underlying circumstances pertaining to this incident. Wilson asserts that he has, from the time of originally filing his complaint, intended to amend his lawsuit if—and/or when—he were to discover or identify any third-party security companies or entities that may be liable for his injuries.

Wilson maintains that, as a part of his ongoing investigation, he discovered the identity of Stratton Amenities ("Stratton"), a security services company Brookfield provided and a potential defendant in this case, on February 21, 2024. Moreover, Wilson maintains he discovered the identity of another potential defendant—Universal Protection Service, LP ("Universal")—on February 26, 2024. In light of these newly discovered details, Wilson now wishes to amend his Complaint under Fed. R. Civ. P 15(a)(2). But, because adding Stratton to the lawsuit would destroy the Court's diversity jurisdiction, if Plaintiff's motion is to be granted, this case must also be remanded under 28 U.S.C. § 1447(c).

## II. Legal Standards

### A. Leave to Amend

Typically, Rule 15 of the Federal Rules of Civil Procedure "control when a plaintiff seeks to . . . amend their pleadings."[1] Rule 15(a) requires a trial court "to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend."[2] And, a district court must possess a "substantial reason"

---

[1] *Smith v. Walmart Inc.*, No. 4:21-CV-1298-P, 2021 WL 5630918, at *1 (N.D. Tex. Dec. 1, 2021).

[2] *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (cleaned up).

to deny a request for leave to amend.[3]  However, motions for leave to amend are not always governed by Rule 15; if amending the complaint would destroy the court's jurisdictional basis, such request "necessarily implicates considerations and analyses beyond a typical Rule 15 motion."[4]  "A motion for leave to amend to add a nondiverse party whose inclusion would destroy diversity and divest the court of jurisdiction is governed by 28 U.S.C. § 1447(e), not Rule 15(a)."[5]

28 U.S.C. § 1447(e) states that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."[6] District courts "must scrutinize such amendment more closely than an ordinary amendment . . . and should use its discretion in deciding whether to allow that party to be added."[7]

## B. Remand

If "the district courts of the United States have original jurisdiction," then a civil action filed in state court may be removed to the federal court embracing the place where the action is pending.[8]  Federal courts have original jurisdiction over actions between citizens of different states when the amount in controversy exceeds

---

[3] *Id.* (cleaned up).

[4] *Smith v. Walmart Inc.*, No. 4:21-CV-1298-P, 2021 WL 5630918, at *1 (N.D. Tex. Dec. 1, 2021).

[5] *Gallegos v. Safeco Ins. Co. of Ind.*, No. H–09–2777, 2009 WL 4730570, at *2 (S.D. Tex. Dec. 7, 2009).

[6] 28 U.S.C. § 1447(e).

[7] *Diaz v. Quantem Aviation Servs., LLC*, No. 3:23-CV-1975-B, 2024 WL 1607066, at *1 (N.D. Tex. Apr. 11, 2024) (cleaned up).

[8] 28 U.S.C. § 1441.

$75,000.[9]  To determine whether an action is removable, federal courts must consider the claims in the state court petition as they existed at the time of removal.[10]   Any ambiguity is "strictly construed in favor of remand."[11]

### III. Analysis

Generally, courts consider motions for leave to amend under Federal Rule of Civil Procedure Rule 15(a)(2).  But when the proposed amendment seeks to join a non-diverse party, the Court's analysis lies within 28 U.S.C. § 1447(e).  A court's denial of joinder requires "balancing the defendant's interest in retaining the federal forum with the plaintiff's competing interest in avoiding parallel federal and state litigation."[12]

Specifically, this balancing test turns on weighing the following distinct factors: (1) whether the purpose of the amendment is to defeat federal jurisdiction, (2) whether the plaintiff has delayed in requesting amendment, (3) whether the plaintiff will be significantly injured if amendment is refused, and (4) other factors bearing on the equities (hereinafter, the "*Hensgens* factors").[13]   The Court will consider each factor in turn.

First, the Defendants contend that the purpose of Wilson's amendment is solely to defeat jurisdiction.[14]   "When courts analyze the first *Hensgens* factor, they

---

[9] 28 U.S.C. § 1332(a)(1).

[10] *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[11] *Id.*

[12] *Ryan v. Schneider Nat'l Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001).

[13] *Id.*

[14] Doc 15 at 5.

consider 'whether the plaintiffs knew or should have known the identity of the non-diverse defendant when the state court complaint was filed.'"[15]

Here, Wilson "realized through continued investigation that Defendants had undertaken to provide a security presence for the expansive premises at issue, but not until the morning of February 21, 2024 . . . was []he able to confirm the identity of Stratton Amenities, LLC."[16]  Defendants persuasively point out that February 21, 2024—the day Wilson's counsel confirmed the identity of Stratton Amenities, LLC—was the same day as counsel's conference regarding its removal.[17]  On this point, Defendants argue that "[w]aiting until shortly after removal to assert claims of which the plaintiff has been aware against a non-diverse defendant raises considerable suspicion concerning [a plaintiff's] purpose."[18]  But this argument falls flat. Defendants don't fill in the gaps of how or to the extent which "[Wilson] has been [or was] aware" of the relevant claims before removal was filed.[19]

In fact, Wilson's affidavit shows the exact opposite, providing that he was only first aware of potential claims against Stratton five days after the removal. Specifically, Wilson's counsel asserts that:

> On February 26, 2024, after further investigation, I learned that Defendants did rely on Stratton Amenities for security services . . . .  My investigation resulted in an understanding that [Stratton and another

---

[15] *Id.* at 2 (quoting *Tomlinson v. Allstate Indem. Co.*, No. Civ. A. 06-0617, 2006 U.S. Dist. LEXIS 29394, 2006 WL 1331541, at *3 (E.D. La May 12, 2006) (quoting *Schindler v. Charles Schwab & Co.*, Civ. A. 05-0082, 2005 U.S. Dist. LEXIS 9193, 2005 WL 1155862, at *3 (E.D. La. May 12, 2005))).

[16] *Id.* at 6–7 (quoting Doc. 12 at 5).

[17] Doc 15 at 7.

[18] *Id.* (quoting *Alba v. Southern Farm Bureau Cas. Ins. Co.*, No. 3:08-CV-0842-D, 2008 WL 4287786 at *2 (N.D. Tex. Sept. 19, 2008)).

[19] *Id.*

5

company] had potential liability for Plaintiff[']s injuries and should be added to the lawsuit.[20]

In considering Defendants' seemingly implied argument that Wilson's request for leave to amend being just five days after removal demonstrates a primary effort to destroy diversity jurisdiction, the Court is not convinced. Because "[t]his lawsuit is in its infancy,"[21] it would be wholly inequitable to expect—or require—that Wilson complete its investigation into whether Stratton "had potential liability for Wilson's injuries" between when Wilson "engaged the legal representation of The Foley Law Firm on January 8, 2024" and when Defendants filed their Notice of Removal on February 21, 2024.[22]

Moreover, Defendants also purport that because "[Wilson's] investigation for responsible parties never sought to include the unnamed intruder who actually perpetrated the crime[,] . . . [this] is telling evidence that Wilson's motion has been made solely for the purpose of destroying diversity jurisdiction."[23] The Court disagrees. While 28 U.S.C. § 1441(b)(1) provides that "the citizenship of defendants sued under fictitious names shall be disregarded" in determining whether a civil action is removable under diversity jurisdiction,[24] the fact that Wilson opted not to include the unnamed intruder in its lawsuit cannot sufficiently give rise to finding that Wilson's principal purpose *now*—in its motion for leave to amend—is to defeat

---

[20] Doc 12 at 5.

[21] Doc 11 at 5.

[22] Doc 12 at 4–5.

[23] Doc 15 at 7.

[24] 28 U.S.C. § 1441(b)(1).

federal jurisdiction.  The naming of a John or Jane Doe defendant—and the relevant, applicable strategies attorneys generally consider—is wholly separate from the relevant, disincentivized strategizes and consequences of purposefully not naming a known-about, non-diverse, named defendant.[25]

Because there is no reason to believe that Wilson seeks to amend his complaint to defeat jurisdiction, the first factor weighs in favor of Wilson.

Second, there has been no delay in requesting the amendment to join the new defendants.  Only a hair over three weeks has elapsed since Defendants filed their answer in regard to when Wilson moved to amend its original complaint: the Defendants' Original Answer was filed on February 12, 2024, their Notice of Removal was filed on February 21, 2024, and Wilson's motion for leave was filed on March 5, 2024.  Thus, there is no indication that Wilson was unnecessarily dilatory.[26]  And the Court highlights that not even a full two months elapsed between when the lawsuit originally commenced—on January 12, 2024—and when Wilson filed its motion to amend.  The second factor weighs in favor of Wilson.

The third factor turns on analyzing whether Wilson will be injured or prejudiced if amendment/joinder is denied.  Wilson asserts that he "will certainly be injured if the amendment is denied."[27] Defendants purport the exact opposite, arguing that "Plaintiff is not prejudiced if joinder is denied" in part because Wilson

---

[25] *Cf. Wudke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) ("It is pointless to include a list of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff.")

[26] *See* Doc. 11 at 15.

[27] Doc. 11 at 15.

still has the option of "pursuing the actual perpetrator," *i.e.*, diversity-killing Defendant Stratton, "in state court."[28]

Wilson starts by setting forth two considerations: that Defendant Stratton has "probable liability for [his] injuries that derive from the same underlying circumstances as the claims currently asserted against Defendants," and that "[Wilson] would be forced to litigate[] against all potential tortfeasors in two separate fora even though the underlying facts relevant to both significantly overlap, and all causes of action are derived from the same occurrence."[29]

In determining whether a plaintiff will be prejudiced without joinder, courts may consider "[i] whether the named defendant would be capable of satisfying a judgement, [ii] whether the non-diverse party is the sole cause of a plaintiff's alleged injury and [iii] whether the plaintiff has offered an explanation for failing to sue the non-diverse defendant initially."[30]

First, Defendant Stratton is the exact type of party a plaintiff in Wilson's shoes would ordinarily seek to target to remedy the harm Wilson suffered. Wilson's complaint centers around and includes negligence claims regarding parties responsible for "ensur[ing] the security and protection of [the] property."[31] As Wilson identifies, "Stratton . . . ha[s] probable liability for [Wilson's] injuries that derive from

---

[28] Doc 15 at 9.

[29] Doc 11 at 15–16.

[30] *See Wren*, 2016 WL 29347 at *3; *Rouf* 2013 WL 6079255 at *3; *Gallegos*, 2009 WL 4730570 at *5.

[31] Doc 15 at 8.

the same underlying facts and circumstances as the claims against Defendants."[32] As far as claims against parties responsible for failing to secure the property in the case at hand goes, Stratton is very relevant, and thus, at least in part, is "capable of satisfying a judgment."[33]

Second, it is generally uncontested that Defendant Stratton's acts and/or conduct is not the "sole cause" of Wilson's injuries. But this factor is not dispositive. In fact, most cases don't address it at all.[34]

Third, Defendants strongly assert that Wilson has not "provide[d] a legitimate reason for failing to initially plead his claims against a non-diverse defendant."[35] Defendants specifically lay out that "the cost and inconvenience of additional litigation stems from [Wilson's] *own failure* to sue the non-diverse defendant in state court."[36] But, Defendants do not explain how exactly Wilson "failed" to provide a legitimate reason, or better stated, why it is unreasonable that Wilson needed about two months to investigate, discover, and fully identify Defendant Stratton in the case at hand. The Court does not find that the time it took discover other relevant parties unreasonable. In turn, the Court disagrees with Defendants that any "cost and

---

[32] Doc. 16 at 5.

[33] Doc. 15 at 8.

[34] *See, e.g.*, *O'Connor v. Auto. Ins. Co. of Hartford Connecticut*, 846 F. Supp. 39, 41 (E.D. Tex. 1994); *Dal-Tile Corp. v. Zurich Am. Ins. Co.*, No. CIV 3:02-CV-751-H, 2002 WL 1878377, at *2 (N.D. Tex. Aug. 13, 2002) (citing to *O'Connor*, 846 F.Supp. at 41); *see also AMX Env't Evolution, Ltd. v. Carroll Fulmer Logistics Corp.*, No. CIV A 3:08-CV-0908-G, 2009 WL 972994, at *4 (N.D. Tex. Apr. 9, 2009) (dissecting the third factor into a two-prong test: "whether (1) the non-diverse defendant is the *sole cause* of plaintiff's harm, and (2) whether the existing defendant can satisfy the judgment" (emphasis added) (citing to *O'Connor*, 846 F.Supp. at 41)).

[35] Doc. 15 at 9.

[36] Doc. 15 at 9 (emphasis added) (citing *Wren*, 2016 WL 29347 at *3).

9

inconvenience of additional litigations stems from Wilson's own failure to sue the non-diverse defendant in state court."[37]

Likewise, it makes little sense as to why, in any efficient judicial economy, the Court should force Plaintiff to litigate this case as it exists now here in federal court but pursue any other similar claims, particularly those against Defendant Stratton, separately in state court.  And this is a case that will likely eventually turn on the "multiple entities [who] were responsible and/or retained control over aspects of security for the apartment building."[38]

Additionally, Defendants don't dispute that the types of claims in this case "arise from the same underlying transaction or occurrence."[39]  As the Court in *Holcomb* found, "the Court should not deny [Wilson] the opportunity to bring all of [Wilson's] related claims in one suit."[40]  And in the cases where courts have found no prejudice resulting to the plaintiff, generally it was due to the fact that the plaintiff knew or should have known of the diversity-killing defendant at the time of filing the original complaint. But such is not the case here and Wilson may be prejudiced if forced to litigate in separate fora.

Under the overarching guidance that "duplicative lawsuits arising out of the same facts in two different courts would waste the parties' resources, potentially lead to inconsistent results, and hamper plaintiff's efforts to effectively litigate [his]

---

[37] Doc 15 at 9.

[38] Doc 16 at 4–5.

[39] Doc. 16 at 5.

[40] *Holcomb v. Brience, Inc.*, No. 3:01-CV-1715-M, 2001 WL 1480756, at *3 (N.D. Tex. Nov. 20, 2001).

claims," Wilson's concerns are given great weight.[41]  In sum, the third *Hengens* factor helps tilts the scales in Wilson's favor.

Neither the Defendants nor Wilson discuss this factor, so the Court must conclude that this factor is "neutral."[42]

Three of the four factors weigh in favor of Wilson and the fourth is neutral. Wilson should be able to amend his complaint.

## IV. Conclusion

For the reasons stated above, the Court **GRANTS** Wilson's motion for leave to amend and motion to remand (Doc. 11). Each party will bear its own attorney's fees and costs. Accordingly, the Court **REMANDS** this case to the 160th Judicial District Court, Dallas County, Texas.

**IT IS SO ORDERED** this 15th day of August, 2024.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[41] *See* Doc. 16 at 6 (quoting *Schindler v. Charles Schwab & Co.*, No. CIV.A.05-0082, 2005 WL 1155862, at *5 (E.D. La. May 12, 2005)).

[42] *See id.*